Opinion by
Mr. Justice Sutton.
The parties will be referred to as they appeared in the trial court, wherein plaintiff in error, Resler, was defendant, and defendant in error, North Eastern Motor Freight, Inc., was plaintiff. The Public Utilities Commission of the State of Colorado will be referred to as “P.U.C.”
Reversal is sought of a judgment finding defendant in contempt of court for violating an injunction prohibiting him from having more than one office from which to operate as a licensed private truck carrier.
The history of the controversy is long and complicated, however, it should be related for an understanding of the problem involved.
It appears that defendant, who has other P.U.C. permits to serve northeastern Colorado and an I.C.C. permit to serve Colorado and other states adjoining its northeastern area, is also a private carrier by motor vehicle pursuant to permit No. A-587 which was transferred to him on January 24, 1956, by one Ralph L. Scott of Haxtun, Colorado.
The pertinent part of the permit involved reads:
“Between Holyoke and Denver and intermediate *54 points, via U.S. Highway 85 and via short-cut over-Colorado Nighway No. 81; transportation of cement and plaster products and household furniture, between Háxtun, Colorado, on the one hand, and points and places in Fort Collins, Colorado, and a five mile radius of Fort Collins, Colorado, and points' and places ini Loveland, Colorado, and a five mile radius of Loveland, Colorado, on the other hand. That Transferee shall have only one 'office for operation and solicitation of business under the authority herein authorized to be transferred, said office to be in Haxtun, Colorado(Emphasis supplied.)
Although no restriction had attached to the Scott permit the P.U.C. in authorizing its transfer to defendant [P.U.C. Decision No. 45233] imposed the underscored office restriction which defendant then consented - to in writing and now objects to.
Plaintiff is a Colorado common carrier by motor vehicle with authority to conduct operations between Denver and Julesburg, Colorado, and intermediate points thus competing with defendant as to part of defendant’s A-587 operation as well as defendant’s Den ver-Julesburg haul.
Plaintiff filed its complaint under C.R.S. ’53, 115-11-21 in the district court of Logan County on November 24, 1959, alleging in substance that defendant in utilizing permit No. A-587 was willfully and wrongfully conducting operations and soliciting business in violation of the office restriction. In particular, plaintiff alleged that defendant was maintaining offices in Sterling and Denver, Colorado, for the operation and solicitation of business. Plaintiff sought actual and exemplary damages, and a mandatory injunction aimed at enjoining defendant from continuing his operations and solicitation of business in Sterling or Denver, or any other place except Haxtun, Colorado.
Following trial to the court judgment was entered on September 29, 1960, finding that defendant had maintained offices as alleged for the operation and solicitation *55 of business in violation of the restriction in his permit. The court assessed actual damages against defendant in the sum of $2,500.00 plus exemplary damages of $1,000.00, and costs. The court then entered the following decree and order:
“The defendant, Dean Resler, be and he hereby is permanently enjoined from having or maintaining more than one office for operation and solicitation of business under the authority of P.U.C. A-587, said one office to be in Haxtun, Colorado; all until such time as he shall lawfully obtain other or different office authority by lawful means.”
A review of the foregoing decree and order was initiated by defendant by writ of error, and was dismissed by this Court on March 22, 1961, because of failure to sue out a writ of error in proper time.
Thereafter, in June 1961, plaintiff sought a citation for contempt against defendant to show cause why he should not be punished for refusing to comply with the decree and order of the trial court entered on September 29, 1960. Plaintiff charged that defendant had and was then violating the injunction and that he was in disobedience of the court’s decree. On December 22, 1961, after hearing, the defendant was found to be in contempt. In its decree, the court recited findings regarding the alleged contempt. The pertinent part of its order states:
“1. Damages in the sum of $400.00, together with costs and interest from the date hereof, be and are hereby assessed against the Defendant and in favor of the Plaintiff.
“2. A fine of $28,000.00, payable into the hands of the Clerk of the Court, is assessed against the Defendant for his past contempt and to vindicate the dignity of the court; provided, however, that $25,000.00 of such fine shall be suspended, on condition that the Defendant faithfully comply with the injunction of this Court entered against the Defendant on September 29, 1960, and *56 for such period as the Defendant shall remain in compliance therewith.”
Five grounds are urged for reversal of the decree of December 22, 1961; we will consider each one separately.
First, did the P.U.C. have power to insert an office restriction on the transfer from Scott?
This question is answered in the affirmative. See: Public Utilities Commission v. Stanton, No. 20329, decided by this Court November 4, 1963.
Second, did the trial court have power to enjoin the defendant from operating in violation of the terms of his permit and to punish him for contempt for violation of its order?
This question is answered in the affirmative. To hold otherwise would render meaningless C.R.S. ’53, 115-11-21 which expressly authorizes the bringing of an action to secure such relief.
Third, is the judgment of contempt “sufficiently clear, specific and definite in its terms as to enable the defendant to determine what he may or may not do?”
In this regard defendant urges that the decree does not meet the requirements of R.C.P. Colo. 65 (d), is void and thus is subject to collateral attack. If it is void he then states that its invalidity is a proper defense in a subsequent contempt proceedings and on writ of error from the same. He relies upon several authorities especially the general rules set out in 17 C.J.S., Contempt, § 8 and 28 Am. Jur., Injunction, § 293 as well as Rule 65 (d) and on Jones v. Board of Adjustment, 119 Colo. 420, 204 P. (2d) 560 (1949) and Red Acres Imp. Club, Inc., v. Burkhalter, 193 Tenn. 79, 241 S.W. (2d) 921 (1951). The two above cases show that the term “office” has been defined in many ways. Defendant further states that Federal Rule 65(d) (which is similar to our rule 65 [d]) requires an injunction to set out in specific terms the activities enjoined and that it can not incorporate other documents by reference, citing B. & C. Truck Leasing, *57 Inc. v. I.C.C., 283 F. (2d) 163 (10th Cir. 1960) and Brumby Metals, Inc., v. Bargen, 275 F. (2d) 46 (7th Cir. 1960).
We agree with defendant’s position that if this decree were void it could be collaterally attacked and that the injunction to be valid must be specific. We disagree with him when he asserts that this particular decree is void for indefiniteness. An examination of both the pleadings and testimony discloses, for example, that defendant knew about the restriction and agreed thereto as a condition to having the permit transferred from Scott to himself; that he had his trucks painted with permit No. A-587 showing Sterling, Colorado, as the home base; that he admitted he actively solicited business under this permit from his Denver office and had only a stopping place in Haxtun located in a creamery with no desk, records or other office necessities; and, that he kept his books, records and operational headquarters in Sterling for this permit. It is urged that, nevertheless, though there were flagrant violations of the conditions of defendant’s permit that this particular injunction leaves defendant in the position of not knowing whether he could continue his operations under his other permits in Sterling and Denver. We do not so view it. Admittedly defendant had no office in the true sense of the word in Haxtun; he certainly knew that solicitation of business in Denver was not doing so in Haxtun. We believe that the injunctive decree of September 29, 1960, is sufficient, valid and enforceable.
We turn next to defendant’s fourth ground of alleged error. Here he asserts that “The evidence is insufficient to justify the judgment and decree in contempt.”
From what has already been said, which details only a small part of defendant’s activities, it can be seen that we have concluded there is ample evidence to warrant both the injunction and the subsequent decree of contempt.
Lastly, defendant urges that the damages awarded and the punishment inflicted by the trial court were “ex *58 cessive and contrary to law.” The trial court heard the evidence and assessed actual damages at $400.00 together with interest and costs. Our review of the record indicates that there is no evidence to support the judgment for damages of $400.00 and, therefore, it must be reversed. As to the fine of $28,000.00, which the trial court assessed for defendant’s past contempt and to vindicate the dignity of the court, we cannot say that it is unreasonable in view of the evidence for only $3,000.00 of it is in fact payable and the balance of $25,000.00 is suspended so long as defendant stops his objectionable enjoined conduct. A deferred fine of this type should be of sufficient size to actually deter a wrongdoer from persisting in his course of conduct, otherwise it merely becomes another cost of doing business. We find no abuse of discretion in this regard.
We hold, therefore, that the judgment of contempt and the fine of $28,000.00, with the suspension on condition of part thereof, must be affirmed and that the judgment for $400.00 actual damages, with interest and costs must be and is hereby reversed.
In affirming the judgment of contempt we note that present counsel for defendant did not represent him in the trial court.
Mr. Justice Hall and Mr. Justice Day concur.